CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
OCT 3 1 2007
JOHN F. CORCORAN, CLERK
BY: DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ISRAEL RAY COOPER, ) | |
| Plaintiff, ) | Civil Action No. 7:07cv00160 |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| WARDEN TRACY S. RAY, et al., ) | By: Samuel G. Wilson |
| Defendants. ) | United States District Judge |

Plaintiff Israel Ray Cooper, a Virginia inmate proceeding pro se, brings this action under 42 U.S.C. § 1983, alleging that the defendants failed to provide him with adequate medical care, failed to protect him from another inmate, subjected him to excessive force and cruel and unusual living conditions, and denied him due process. Cooper seeks $30,000 in damages, court costs, and a charge for possessing contraband removed from his record and all resulting fines reimbursed. The court finds that Cooper's allegations fail to state a claim upon which the court may grant relief and, therefore, dismisses his action pursuant to 28 U.S.C. § 1915A(b)(1).

I.

Cooper alleges that on October 12, 2005, he was moved into Building C, pod 3, cell 14 at Red Onion State Prison. After being moved, he informed security officers and defendant Warden Tracy S. Ray, both orally and in writing, that he had problems with the inmates housed in cells 13 and 15, the cells on both sides of his cell. Defendant Major Chris responded to Cooper's letters by telling him that he was housed in a safe environment, but that if he wished to "declare an enemy," he should contact his counselor. Cooper does not allege that he ever requested to declare either inmate an enemy. On October 29, 2005, inmate Canada, in cell 13, allegedly threw feces into the ventilation system in order to "cause discomfort to Cooper." Cooper complained about this incident and requested to be moved to another cell. Cooper claims that defendants Lt. T. McCoy and Sgt. T. Adams denied his requests on two separate occasions. Thereafter, on November 14, 2005, Cooper

was outside at recreation, and inmate Canada was brought outside and placed near him. Inmate Canada proceeded to squirt Cooper with feces and urine contained in a shampoo bottle he brought out with him. Apparently, the bottle was not found when the security officers searched him prior to allowing him in the recreation area. Cooper alleges that defendants Warden Tracy S. Ray, Major Chris, Lt. T. McCoy, and Sgt. T. Adams failed to protect him from inmate Canada.

After the incident, officers took Cooper to the showers to clean up. He requested medical care, and defendant Nurse P. Mullins told him to rinse his eyes out with cool water and then follow up with a sick call if he needed further medical treatment. Cooper claims that even after he rinsed his eyes out, he still had "gritty fecal substance stuck under his [left] eyelid." He then filed an emergency grievance about the incident, complaining that he had been "exposed to Hepatitis A, B, or C" from the human waste. Defendant Nurse Sutherland determined that his request did not meet the definition of an emergency and instructed him to place a sick call if he wanted to be tested for anything. Cooper does not allege any injury to his eye or that he contracted any disease as a result of the incident. Cooper alleges that defendant nurses Mullins and Sutherland denied him adequate medical treatment.

Cooper alleges that on September 1, 2005, after an alleged assault on two officers through his food tray slot, defendant Lt. Rose placed Cooper in four-point restraints for an unspecified period of time and then in a strip-cell with only a "suicide smock." Cooper claims that he made no statement indicating that he would harm himself and that his placement in the strip-cell was "used as a means to control [his] behavior" and "solely to punish" him for the alleged assault. Cooper remained in the strip-cell until approximately 2:00 AM on September 2, 2005. Cooper complains that defendant Lt. Rose used excessive force against him.

On November 3, 2005, Cooper was charged with an institutional infraction for possessing

contraband, specifically, a magazine with another inmate's name on it. At his disciplinary hearing on November 16, 2005, Cooper was found guilty and fined $10.00. Cooper argues that on the Disciplinary Offense Report, the Officer in Charge ("OIC") did not sign or date the form and, therefore, the charge should be voided, the conviction expunged from his record, and the $10.00 fine refunded to him. When Cooper made this same argument to prison officials at his disciplinary hearing, defendant Officer L. Mullins told him that the policy regarding the officer in charge signing the form was "not written in stone." Cooper claims that Division Operating Procedure ("DOP") § 861 mandated the OIC signing-off on the charge and penalty offer.

Finally, Cooper alleges that on January 17, 2007, defendant Officers E. Creech and R. Branham performed a shakedown of his cell. During the shakedown, defendant Creech removed two pencil drawing from Cooper's cell because they were contraband and allegedly contained nudity of children. Cooper claims that the pictures were actually drawings of his daughter in a semi-clothed state, one of which depicts her in a pond, lifting up her skirt, exposing her naked private area, and playing with ducks, and the other of which depicts her partially naked in a pair of tennis shoes. Cooper complains that no confiscation sheet was given to him for those two items and thus, defendant officers Creech and Branham violated his right to due process. In response to his informal complaint, a prison official stated that Cooper's cell was searched in accordance with "current policy" and that all contraband was turned over to the investigator. In response to his Level I grievance, Warden Tracy Ray indicated that an investigation had been conducted and Cooper had been interviewed by the investigator. He further stated that the confiscated pictures were "considered to be child porn" and that Cooper would not get them back. He also indicated that Cooper's grievance was unfounded as "procedures have been correctly applied." Cooper complains that Warden Ray violated his rights when he found that Cooper's grievance on this issue was

3

unfounded. Cooper appealed the Level I response, arguing that Warden Ray did not address the "issue of his grievance" which he states was due process. He also argued that the pictures depicting "naked little girls in the act of playing" are not child pornography, but stressed that "the issue is not about child porn. It's about the fact that [his] property was taken without due process." In response to his Level II grievance, the Regional Director indicated that the investigation revealed that a confiscation notice was issued to him on March 6, 2007, after the investigator had an opportunity to further investigate. Cooper maintains that he never received a confiscation notice listing the two pictures.

## II.

The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). To establish a claim under § 1983 for failure to protect from violence, an inmate must show: (1) "serious or significant physical or emotional injury," and (2) that the prison officials had a "sufficiently culpable state of mind." Burks v. Pate, 119 Fed. Appx. 447 (4th Cir. 2005); De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003); Farmer, 511 U.S. at 834. Cooper alleges that defendant Lt. T. McCoy failed to protect him from inmate Canada squirting feces in the ventilation system and that defendants Warden Tracy Ray and Major Chris failed to protect him from Canada squirting a bottle of urine and feces on him in the recreation yard. With regard to the feces in the ventilation system, Cooper only alleges that it caused him "discomfort." With regard to the incident on the recreation yard, Cooper concedes that he was taken to the showers to clean up and that he flushed his eyes out with water. The only "injury" Cooper alleges as a result of the incident is that he had "gritty fecal substance" under one eyelid. He does not allege that he suffered any other injury, that the grit in his eye caused any damage, or that he had any other problem with his eye or vision. Accordingly, the

4

court finds that Cooper does not allege anything more than <u>de</u> <u>minimis</u> injury, and, therefore, has failed to allege facts which, if proven, would satisfy the objective element of an Eighth Amendment failure to protect claim.

## III.

In order to state a cognizable claim for denial of medical care under the Eighth Amendment, a plaintiff must allege facts sufficient to demonstrate deliberate indifference to a serious medical need. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). To establish deliberate indifference, a plaintiff must present facts to show that the defendant had actual knowledge of and disregard for an objectively serious medical need. <u>Farmer</u>, 511 U.S. at 825; <u>see also</u> <u>Rish v. Johnson</u>, 131 F.2d 1092, 1096 (4th Cir. 1997). A claim regarding a disagreement between an inmate and medical personnel over diagnosis or course of treatment and allegations of malpractice or negligence in treatment do not state cognizable constitutional claims under the Eighth Amendment. <u>Wright v. Collins</u>, 766 F.2d 841, 849 (4th Cir. 1985); <u>Estelle</u>, 429 U.S. at 105-06. Moreover, claims of medical judgment are not subject to judicial review. <u>Russell v. Sheffer</u>, 528 F.2d 318 (4th Cir. 1975).

While Cooper claims that he was denied adequate medical treatment after he was squirted with feces and urine, he concedes that he was taken immediately to the showers to clean off, seen by Nurse P. Mullins, who told him to rinse his eyes out with cool water, and advised by Nurse Sutherland to place a sick call if he wished to be tested for any disease. Accordingly, though Cooper may desire a different reaction to and course of treatment after the incident, the court finds his claim amounts to nothing more than a disagreement between medical personnel and a patient regarding proper course of treatment, which is not actionable under the Eighth Amendment.

## IV.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S.

5

Const. amends. VIII. The Eighth Amendment protects prisoners from the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment excessive force claim, an inmate must satisfy both a subjective component– that the prison official acted with a sufficiently culpable state of mind– and an objective component– that the harm inflicted on the inmate was sufficiently serious. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).

With respect to the subjective element, the court must determine whether the defendants used force "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). The following factors should be considered when evaluating whether a prison official acted maliciously and sadistically: (1) the need for the use of force, (2) "the relationship between that need and the amount of force used," (3) the threat "reasonably perceived by the responsible officials," and (4) "any efforts made to temper the severity of a forceful response." Id.; Williams, 77 F.3d at 762. The absence of any serious injury is also relevant, though not dispositive of the subjective analysis. Hudson, 503 U.S. at 7.

With respect to the objective element, a prisoner "asserting malicious and sadistic use of force need not show that such force cause an 'extreme deprivation' or 'serious' or 'significant' pain or injury to establish a cause of action." Williams, 77 F.3d at 761 (quoting Hudson, 503 U.S. at 9); Norman v. Taylor, 25 F.3d 1259, 1263 n. 4 (4th Cir. 1994). "All that is necessary is proof of more than de minimis pain or injury." Williams, 77 F.3d at 761. "[A]bsent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis." Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir. 1998). However, a de minimis injury may amount to an Eighth Amendment violation if the force used was of the sort "repugnant to the conscience of mankind." Norman, 25 F.3d at 1263, n. 4.

6

The court finds that Cooper's allegations satisfy neither the subjective nor objective element required to establish an excessive force claim. When the guard placed Cooper into four-point restraints and then in a strip cell, it was in response to Cooper assaulting officers through the food tray slot. Cooper makes no allegation that the officer used pepper spray or that he physically assaulted him; rather, he concedes that the officers use of four-point restraints and placement in the strip cell was a means of controlling his behavior after he acted out and physically threatened officers. Cooper does not allege that the defendant was acting maliciously and sadistically to cause him harm. Therefore, the court finds that Cooper has not satisfied the subjective element. Moreover, Cooper has not alleged that he suffered any injury and certainly not more than de minimis injury as a result of being placed in four-point restraints and placed in a strip-cell for less than one day.[1] Furthermore, he has not alleged that the "force" used was of the sort "repugnant to the conscience of mankind." Therefore, the court finds that Cooper has not satisfied the objective element. Accordingly, the court finds that Cooper's claim does not rise to the level of a constitutional violation.

## V.

To the extent Cooper's placement in the strip-cell with only a suicide smock for one day can be construed as a living conditions claim, it also fails. Although the Eighth Amendment protects

---

[1] The court notes that in Williams v. Benjamin, 77 F.3d 756 (1996), the Fourth Circuit implied that the use of four-point restraints for eight hours under harsh conditions could be sufficient to establish the objective component of an Eighth Amendment violation. Id. at 762 (noting that "mankind has devised some tortures that leave no lasting physical evidence of injury"). However, several material facts distinguish this case from Williams. See also Jackson v. Lamont, 19 Fed. Appx. 97, 103 (where the Fourth Circuit reversed the district court which relied on Williams to dismiss an excessive force claim concerning restraints when the inmate had not shown more than de minimis injury). First, in Williams, officers had sprayed Williams with CS tear gas, the type used by the military and that is potentially lethal, and did not allow him to wash it off while he was in the four-point restraints. In this case, Cooper does not allege that the defendants used any gas or even pepper spray. He also does not allege that he had any needs, medical or not, that were not addressed during the time he spend in four-point restraints. Second, the effect on the inmate in the four-point restraints was substantially more severe in Williams than in this case. Williams' restraints were so restrictive that they prevented him from eating and required him to urinate on himself. Cooper makes no such allegation concerning the restraints used on him, and does not even allege that they were uncomfortable.

7

prisoners from cruel and unusual living conditions, an inmate is not entitled to relief simply because of exposure to uncomfortable, restrictive, or inconvenient conditions of confinement, for, "[t]o the extent that such conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Therefore, in order to state a claim of constitutional significance regarding prison conditions, a plaintiff must allege that the living conditions violated contemporary standards of decency and that prison officials were deliberately indifferent to those conditions. Wilson v. Seiter, 501 U.S. 294 (1991). In addition, a plaintiff must allege facts sufficient to show either that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions or that the conditions have created an unreasonable risk of serious damage to his future health. Strickler v. Waters, 989 F.2d 1375, 1380-81 (4th Cir. 1993); Helling v. McKinney, 509 U.S. 25 (1993). While strip-cell conditions may have been inconvenient, uncomfortable, and unfortunate for the partial day that he was there, Cooper has not alleged anything to suggest that these conditions violate contemporary standards of decency. Nor has he alleged that because of the conditions, he has sustained a serious or significant injury or is at risk of a future injury. Therefore, the court finds that Cooper has failed to allege a constitutional claim under the Eighth Amendment.

## VI.

Inmates have a right to be free of arbitrary punishment. See Howard v. Smyth, 365 F.2d 428 (4th Cir. 1966). However, their constitutional protections are limited and a claim that prison officials have not followed their own policies or procedures does not amount to a constitutional violation. See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990) (if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); Keeler v. Pea, 782

8

Case 7:07-cv-00160-SGW-mfu   Document 25   Filed 10/31/07   Page 8 of 11   Pageid#: 139

F. Supp. 42, 44 (D.S.C. 1992) (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983). In this case, Cooper alleges that his institutional infraction for possessing contraband is invalid because the OIC did not sign or date the report, which he claims is required by DOP § 861. The court finds that even if DOP § 861 does require that the OIC sign and date the report, the failure to follow this policy does not rise to the level of a constitutional violation and, thus, Cooper's claim fails.

## VII.

Finally, Cooper claims that officers confiscated two hand-drawings from his cell during a shakedown without providing him with a confiscation notice and, thus, violated his right to due process. To the extent that Cooper argues that the VDOC's policy providing for the confiscation of contraband property violates his due process rights, it fails. The deprivation of property may implicate constitutional rights if such deprivation is accomplished without providing the property owner due process of law. Parratt v. Taylor, 451 U.S. 527, 537 (1981); see also Carey v. Piphus, 435 U.S. 247, 259 ("Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of . . . property"). To determine whether a constitutional violation has occurred, the court must determine what procedural protection the state has provided in conjunction with the policy and whether those procedures were sufficient to ensure that deprivations pursuant to the policy are lawful. Zinermon v. Burch, 494 U.S. 113, 126 (1990). When the deprivation is made pursuant to some official policy, the inmate must be afforded some combination of predeprivation notice and a chance to be heard. Id. The property owner should have a chance to be heard before he is deprived of the property whenever such a procedure is feasible. Id. Pursuant to VDOC DOP § 802.1, "[a] facility may seize, and should retain custody of, the property until a determination regarding confiscation has been made." In addition, "[t]he offender

9

should be given notification of the confiscation and the right to appeal before the property is permanently confiscated." Under the established policy, inmate property may be confiscated if, among other reasons, "[t]he property is contraband." In this case, Cooper's drawings were confiscated as contraband. The court finds that the VDOC's policy of providing a confiscation notice and an opportunity to challenge the confiscation is sufficient to satisfy the inmate's due process right in this case, and thus, Cooper's claim fails.

To the extent Cooper argues that the officers did not follow policy in confiscating his drawings by failing to provide him with a confiscation notice, his claim does not rise to the level of a constitutional violation. The intentional or negligent deprivation of personal property by a prison employee acting outside the scope of official policy or custom does not rise to the level of a constitutional violation so long as the state provides an adequate post-deprivation remedy. See Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981). The state has established a grievance procedure which Cooper has utilized in this matter. Further, an investigator conducted an investigation in this matter and interviewed Cooper before a final confiscation decision was made. Further still, the Virginia Tort Claims Act is also available to Cooper. See Wadhams v. Procunier, 772 F.2d 75 (4th Cir. 1985) (holding the remedies available under the Virginia Tort Claims Act to be sufficient post-deprivation remedies); Ballance v. Young, 130 F. Supp. 2d 762, 767 (W.D. Va. 2000). Accordingly, because there are state remedies capable of addressing Cooper's alleged injury, the court finds that to the extent the defendants intentionally or negligently deprived him of his personal property, he has failed to state a cognizable constitutional claim.[2]

---

[2] Although Cooper does not raise his claim as such, to the extent it can be construed as a First Amendment challenge to his right to free speech, it is both unexhausted and fails on the merits. An inmate specifically retains those constitutional rights afforded to him by the First Amendment. See Pell v. Procunier, 417 U.S. 817, 822 (1974); see also Ross v. Reed, 719 F.2d 689, 693 (4th Cir. 1983). In the prison context, however, an inmate's First Amendment rights must often bow to other valid penological concerns. See Montcalm Publishing Corp. v. Beck, 80 F.3d 105, 107 (1996)
(continued...)

## VIII.

For the reasons stated herein, the court dismisses Cooper's suit without prejudice, pursuant to § 1915A(b)(1) for failure to state a claim.

**ENTER:** This 31st day of October, 2007.

United States District Judge

---

[2](...continued)
(citing Procunier v. Martinez, 416 U.S. 396, 417-18 (1974), overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401 (1989)). Any regulation of speech, however, must not be any more encompassing than necessary to further the penological interested involved. See Montcalm Publishing Corp., 80 F.3d at 108 (citing Martinez, 416 U.S. at 424). The Supreme Court held that when a prison restriction infringes upon an inmate's First Amendment rights, the alleged infringement "must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979) (citing Jones v. North Carolina Prisoners' Labor Union, 433 U.S. 119 (1977)).

This court is aware of the special circumstances that arise in the confines of prisons. Not only should the court allow great deference in the formation of prisons regulations, but perhaps more importantly, to the judgment of prison officials. To determine whether the defendants violated Cooper's constitutional rights, the court must consider four factors: (1) whether there is a "valid, rational connection" between the regulation and a legitimate and neutral governmental interest; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to inmates; (3) whether the extent to which accommodation of the asserted right will have an impact on prison staff, on inmates' liberty and on the allocation of limited prison resources; and (4) whether the regulation represents an "exaggerated response" to prison concerns. Turner v. Safley, 482 U.S. 78, 89-91 (1987). Moreover, the burden of proof under the Turner analysis is on the prisoner to disprove the validity of the prison regulations at issue. Overton v. Bazzetta, 539 U.S. 126, 132 (2003).

In this case, the court can conceive of a legitimate penological interest in keeping child pornography out of the hands of inmates. A ban on inmate access to such sexually explicit material advances jail security and protects the safety of jail personnel and other inmates. Prison security and safety are legitimate governmental objectives. See Thornburgh, 490 U.S. at 415 (prison security is a legitimate governmental purpose "central to all other corrections goals") (quotations omitted); Mauro v. Arpaio, 188 F.3d 1054, 1059 (9th Cir. 1999) ("[T]here is no doubt that protecting the safety of guards in general is a legitimate interest, and that reducing sexual harassment in particular . . . is legitimate."). Moreover, possession of child pornography is illegal under both state and federal law, and in 2001, Cooper was convicted of distributing child pornography by the Brunswick County Circuit Court. The prison has a legitimate interest in rehabilitating Cooper. See Pell v. Procunier, 417 U.S. 817, 823 (1974). The court finds that the prison's ban on child pornography is rationally related to these objectives. Further, despite a policy against child pornography, the prison's regulations allow a broad range of publications to enter the facility. Thornburgh, 490 U.S. at 418 ("As the regulations at issue . . . permit a broad range of publications to be sent, received, and read, [the second Turner factor] is clearly satisfied."). Indeed, the ban on this type of sexually explicit material does not prohibit pictures of clothed children, pictures of clothed women/men, or sexually explicit prose. Mauro, 188 F.3d at 1061 (finding second Turner factor met where prison regulation did not ban sexually explicit letters between inmates and others or sexually explicit articles or photographs of clothed females). Moreover, to allow inmates to possess child pornography would have a significant impact on the safety and security of prison personnel and other inmates. Lastly, Cooper points to no alternative that fully accommodates his rights while at the same time imposing de minimis cost to valid penological interests. Therefore, the court finds that the prison's ban on child pornography passes constitutional muster.

11